# TERRENCE W. KIRK
### ATTORNEY AT LAW
### 1504 WEST AVENUE
### AUSTIN, TEXAS 78701
### (512) 236-8511
### (FAX) 476-5346

83,158-01

BOARD CERTIFIED CRIMINAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

E-MAIL ADDRRESS:
tkirk@defenselawyer.net

May 8, 2015

Tina Morgan Freeman
Clerk, District Court
Caldwell County
1703 S. Colorado St. Box 3
Lockhart, Texas 78644

Re: *Ex parte Pedro Javier Quintero*, No. 2011-018A

Dear Ms. Freeman,

Enclosed please find the original and one (1) copy of Applicant's Objections to the Trial Court's Findings of Fact and Conclusions of Law in this cause. Pursuant to Article 11.07 of the Code of Criminal Procedure, please transmit the Objections to the Texas Court of Criminal Appeals *immediately*. A copy of this request is being sent to the Court of Criminal Appeals to ensure that the Objections are transmitted in a timely fashion. Thank you for your assistance.

Sincerely,

T— W. K—

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 14 2015

Abel Acosta, Clerk

cc: Texas Court of Criminal Appeals
Honorable Fred H. Weber

## NO. 2011-018A

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | OF CALDWELL COUNTY |
| PEDRO JAVIER QUINTERO | § | 421ST JUDICIAL DISTRICT |

## OBJECTIONS TO TRIAL COURT'S FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Applicant Pedro Javier Quintero, by and through his undersigned counsel, and respectfully submits the following objections to the Court's Findings of Fact and Conclusions of Law:

1. Applicant objects to the Court's findings in their entirety since the Court did not make a timely finding pursuant to Article 11.07 § 3(c) that there were no controverted facts material to deciding the legality of Applicant's confinement. The Court did not make this finding until April 13, 2015, long after Applicant's writs were filed on January 30, 2015. With respect, the Court had no authority to act after the twenty days had passed, and the applications should have been "immediately" transmitted to the Court of Criminal Appeals.

2. Applicant objects to any consideration by the Court of the State's answer. The Answer was untimely, coming on April 10, 2015, more than two months after Applicant's writs were filed. Article 11.07 provides only fifteen days after an application is received for the State to answer. Moreover, as noted, the writ should have been sent to the Court of Criminal Appeals long before the State filed its answer.

1

3. Applicant objects to the Court's adopting the findings and conclusions in the State's Answer without giving counsel time for Applicant to respond to them before the writ was sent to the Court of Criminal Appeals. Such a practice violates due process.

4. Applicant objects to the Court's failure to order that a copy of Applicant's Memorandum of Law be transmitted to the Court of Criminal Appeals. There needs no ghost came from the grave to announce that the legal arguments of *both* parties should be presented to an appellate court for review, not just the State's Answer.

5. Applicant objects to the State's assertion at p. 2 of its Answer, that Jordan Castillo was the girlfriend of Johnny Lozano. This claim is incredible since the record shows that the *alleged victim* was the girlfriend of Lozano - - at least until the alleged sexual assault. The State's failure to get even this basic fact of the case straight is telling.

6. The State complains that the copy of the photograph attached to the writs is of "poor quality" and not subject to identification. The short answer is that the photograph was given to Applicant in discovery by the State. Moreover, Exhibit B of Applicant's writ clearly shows Applicant, not the alleged victim.

7. Although the record indicates that trial counsel did subpoena Jordan Castillo, trial counsel did not move for a continuance or request a writ of attachment when Castillo was allegedly not present at the courthouse (a controverted issue of fact). Consequently, the State's assertion, at p. 3, that she "did everything she could have done under the circumstances to secure Castillo's presence" is inaccurate.

8. The State contends, at p. 4, that Castillo's testimony would have been hearsay, and that the photographs [sic] could not have been authenticated. This ignores that Castillo could have identified the picture of Applicant, and that Lozano's statements

2

about the photos might as well have been excited utterances. Moreover, in any event, Applicant had the right to confront the alleged victim with the photograph and to question her about the other photographs.

9. Applicant objects to the State's contention, at p. 4, that he was not prejudiced by the fact Castillo did not testify because his DNA was found and because of the alleged injuries of the supposed victim. Applicant's defense was that the sex was consensual, so the presence of DNA meant nothing. The alleged injuries were consistent with rough sex, but more to the point, how could testimony about the alleged victim posing like a Playmate, if believed, not constitute reasonable doubt?

10. The State contends that the testimony of Robert Rangel and Doug Cruz would have been barred by Rule 412 because Rule 412 contains no exception for impeachment. State's Answer at p. 4. The State ignores that Rule 412(b)(2)(C) allows evidence that "relates to" the "bias or motive" of the alleged victim. Since the alleged victim portrayed herself as traumatized into solitude and seclusion, evidence that she was not showed her bias. Moreover, evidence that is "constitutionally required" to be admitted is not barred by Rule 412. It is true that a complaining witness's sexual history is not ordinarily relevant, but it cannot be that she can lie without reservation about that history, not without violating the Confrontation Clause.

11. The State maintains, at p. 5, that trial counsel made a strategic decision not to introduce copious evidence showing that the alleged victim was not traumatized. According to trial counsel, she was afraid that if she introduced such evidence, the State would respond by calling an expert to testify about the effects of a sexual attack. And trial counsel avers in her affidavit that she was aware from past experience that

3

introducing evidence of "Kelsey posing provocatively, drinking, flirting, having sex, buying beer, or any number of other bad behavior to disprove her and her mother's *testimony of trauma*," (emphasis added) would have "opened the door" for an expert to testify that her behavior after the offense was "consistent with trauma."

This makes no sense, however. The alleged victim and her mother did not admit that she had behaved provocatively, but testified that shad become withdrawn. An expert might have explained why trauma could cause promiscuous behavior, but could not have explained why the alleged victim lied about the nature of the trauma - - and why she presented herself as withdrawn when she was, "in fact, all over the internet." Moreover, trial counsel marked four photographs for identification. *See* Exhibit C to Applicant's writ. Can anyone believe that counsel suddenly remembered the deadly expert just before she was ready to introduce the photographs? And when the photographs expose the complaining witness as a liar, who cares about an expert? There was no strategy here, much less a reasonable one.

12. At page 6 of its Answer, the State complains that trial counsel could not have been ineffective for failing to call Roxanne Garcia because Garcia was unknown until after the trial. Quiet true, but Applicant did not fault trial counsel for this - - he submitted that it was newly-discovered evidence. The State also insists that the evidence would have been inadmissible, but it would not have been offered to show the alleged victim's sexual history, but as an inconsistent statement: She testified at trial that Everett Rainey had been part of the gang that assaulted her, but years later bragged about sleeping with Rainey.

4

13. Applicant objects to the State's conclusion, at pp. 7-8, that all of the evidence would not have gone "directly" to the defense, but only constituted impeachment on "collateral issues." The credibility of the complaining witness was hardly a collateral issue, and her false testimony about being traumatized was hardly "collateral." When trial counsel inexplicably failed to show that the alleged victim was a liar, no wonder Applicant fled.

14. Applicant objects to the State's argument about actual innocence. State's Answer at pp. 7-8. With all the evidence that counsel did not present, along with new evidence showing the complaining witness admitted having consensual sex with one of the accused attackers, no jury could find Applicant guilty. The photos and the texts in this case do not lie - -the alleged victim did.

Respectfully submitted,

_T— V. K_

TERRENCE W. KIRK
State Bar No. 11513500
1504 West Avenue
Austin, Texas 78701
(512) 236-8511
(512) 476-5346 (Fax)
ATTORNEY FOR PETITIONER

5

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Objections was mailed to Mr. Fred H. Weber, Criminal District Attorney, Caldwell County, P.O. Box 689, Lockhart, Texas 78644, on this the _____ day of May, 2015.

_____
TERRENCE W. KIRK